Peggy Sue Brown HIGGINS, Plaintiff-Counter Defendant-Appellant,

v.

James Thomas HIGGINS, Defendant-Counter Plaintiff-Appellee.

Court of Appeals of Tennessee, Middle Section.

Nov. 16, 1981.

Permission to Appeal Denied by Supreme Court March 8, 1982.

Hugh E. Green, Jr., B. F. Lowery, Lebanon, for Peggy Sue Brown Higgins.

D. Russell Thomas, Scott Daniel, Daniel, Burton & Thomas, Murfreesboro, for James Thomas Higgins.

ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(The original opinion has been abridged with the concurrence of the participating judges.)

The plaintiff-counter defendant-wife has appealed from the judgment of the Trial Judge awarding to defendant-counter plaintiff-husband an absolute divorce, custody of three minor children and a division of jointly held property.

The issue presented by appellant is as follows:

The Trial Court should have awarded custody of the two minor daughters to the plaintiff-wife.

In his opening statement, counsel for the appellee said:

It is our position that we should have custody of the two younger children; the oldest child of the three children, Kim Higgins, who is age seventeen now, has been admittedly a real problem in this case because of her attitude towards staying with her father.

. . . .

MR. DANIEL: As to the custody, we seek what is in the best interest of the children. We don't feel that we can compel the older daughter if she's going to do the kinds of things she says she is, if she's headstrong there is no reason to try to force her to stay with her father.

During the pre-trial discussion between counsel and the Court, the following occurred.

MR. LOWERY: . . . it appears to me that it might even be more streamlined toward reaching the conclusion if we would resolve the question of the young child, if she could be interviewed by the Court.

THE COURT: I'm not going to do that.

MR. LOWERY: Well, let me ask you this: May we put her on the witness stand?

THE COURT: No, I don't want her on the witness stand and I'm not going to interview her.

In *Mullican v. Mullican,* unpublished, Nashville, December, 1978, this Court reversed and said:

Appellant has filed three assignments of error of which the first is as follows:

"1. That the trial court erred in refusing Appellant's request to examine a minor for the purpose of determining said minor's suitability for testimony."

At the hearing upon the motion/petition to alter, amend or modify, defendant offered the testimony of the older child of the parties, aged 11. The Trial Judge ruled as follows:

"THE COURT: Well, the Court's always taken a position—no, I've never allowed it in any case of a child under twelve (12). And, in fact, I refuse to even talk to a child under twelve (12) in a matter of this nature, and so—In fact, even in Juvenile Court as far as I know of, I always refuse to. So, therefore, let your request be denied.

. . . .

THE COURT: I'm not—for even placing this child on the witness stand or for even me questioning the child in Chambers.

. . . .

THE COURT: I will not permit the child to be called."

. . . .

. . ., it was reversible error for the Trial Judge to refuse to allow the child to testify for the record unless he was justified in so doing because of her age.

T.C.A. § 24–101 provides as follows:

"24–101. Capacity to understand oath.—Every person of sufficient capacity to understand the obligation of an oath is competent to be a witness. [Code 1858, § 3807; Shan. § 5592; Code 1932, § 9774.]"

■ There is no precise age within which witnesses are *absolutely* excluded upon the presumption that they have not sufficient capacity to testify. At the age of 14 years, a witness is presumed (prima facie) to have sufficient discretion and understanding to testify (until contrary evidence is produced). Under the age of 14, the presumption does not arise; but the Trial Judge usually examines the witness to ascertain his degree of understanding; and, if the witness manifests sufficient natural intelligence and understands the nature and obligation of the oath, he may be examined, whatever his age. *Ball v. State,* 188 Tenn. 255, 219 S.W.2d 166 (1949).

In *Burke v. Ellis,* 105 Tenn. 702, 58 S.W. 855 (1900) the Supreme Court held that it was not error to allow a child of 7

years to testify where no objection was made, it being presumed that the Trial Judge was satisfied that the child was competent.

In *Franks v. State,* 187 Tenn. 174, 213 S.W.2d 105 (1948), it was held that it was not error to admit testimony of a 7 year old child who stated that children who did not tell the truth "did not go to Jesus."

In *Bright v. State,* 191 Tenn. 249, 232 S.W.2d 53 (1950) it was held not error to admit testimony of a 10 year old child without objection where the child had been qualified and had testified in a previous trial.

In *Dix v. State,* 4 Tenn.Cr.App. 412, 472 S.W.2d 243 (1971) a 7 year old child was permitted to testify.

In *Surcey v. State,* 4 Tenn.Cr.App. 542, 474 S.W.2d 167 (1971) it was held that girls 12 and 15 years of age were competent to testify and that the determination was within the discretion of the Trial Judge.

In the present case, the Trial Judge simply failed to exercise his discretion. He was not in position to do so because he declined to hear even the voir dire qualification of the witness. Without such qualifying evidence, the Trial Judge could not, and this Court cannot, make a just decision as to whether or not the witness was qualified.

It will therefore be necessary to reverse and remand to enable the Trial Judge to hear evidence as to the capacity of the child to understand the obligation of the oath and, if she is found to have such capacity, to hear her testimony. If any parts of her testimony are deemed inadmissible, then such excluded testimony must be permitted to be given for the record even though not considered by the Trial Judge.

The policy of the Trial Judge in respect to testimony of children in divorce cases arises from a commendable desire to protect them from the emotional strain and trauma engendered by the dispute between their parents. However commendable the motive and desirable the result, the right of the parties to prove the facts and the duty of the Court to ascertain the facts must take precedence over the natural desire to protect a child from temporary emotional disturbance.

The ruling of the Trial Judge doubtless arises in part from holdings in *Schwalb v. Schwalb,* 39 Tenn.App. 306, 282 S.W.2d 661 (1955) and *Humphreys v. Humphreys,* 39 Tenn.App. 99, 281 S.W.2d 270 (1955) that preferences of children of 14, 16 and over were properly considered in determining their custody. However, no Tennessee authorities have been found to the effect that it is *improper* to consider the desires or preferences of a child of lesser age.

At the time of the hearing in November, 1980, the ages of the children stated as: Kim 17, Tommy 14 and Tina 11. It was conceded that Kim was adamantly opposed to living with her father, Tommy preferred to live with his father, and the preferences of Tina do not appear from the record. The record does disclose a long and troublesome history of efforts to force Kim and Tina to stay with their father.

From a consideration of the lengthy proceedings relating to the temporary and permanent custody of these children, this Court concludes that the rights of the children were not properly represented or protected by the intensely hostile attitudes, motivations and actions of their parents. That is to say, the circumstances of this case were such that the rights of the children could not be fairly represented by counsel for their parents. Under such circumstances, the Chancellor could not and should not be expected to act as counsel for the children.

For these reasons, this Court has determined that the question of custody of and visitation with each of the children should be redetermined upon a complete evidentiary retrial, at which each of the children involved should have the benefit of competent counsel designated by the Chancellor and compensated by the parties in proportion to their ability. By this means, there will be developed one complete record of all of the evidence entering into the decision which may then be reviewed by this Court, if necessary, upon a complete evidentiary record.

The redetermination of custody, with counsel for the children, should be made solely upon the evidence introduced on remand, and without consideration of evidence previously heard, unless reintroduced and made a part of the record on remand.

Another issue presented by appellant is as follows:

The Trial Judge incorrectly awarded the defendant-husband a substantially greater portion of the parties' jointly owned property and did not provide the plaintiff-wife with an equitable share of the estate.

The principal complaint under this issue is that the Chancellor divided the joint estate of the parties by awarding to the husband the home, farm, implements, household furnishings and a pick-up truck, all to the approximate value of $625,000 and awarded to the wife the cash sum of $100,-000, payable in five years with interest payable monthly at 10%. The wife did receive an automobile, a $3,900 bank account and certain jewelry and personal effects.

The husband insists that the farm was worth only $270,000. Each party presented evidence supporting his or her evaluation. This Court is unwilling to review de novo such widely disparate evidence upon so important a matter under the circumstances. If this were an eminent domain case, it would be necessary for the Chancellor and this Court to make a determination of value in order to compensate the owner for the property taken. In the present case, there is no necessity to reconcile such widely varying testimony as to value in order to establish the amount of a cash payment as a means of division.

■ T.C.A. § 36–825 states that the court "may, in its discretion, adjust and adjudicate the rights and interests of the parties." This does not require that a cash partition be decreed in every case. This is a case wherein justice could and would be more accurately established and determined by leaving the parties as tenants in common of their jointly owned property or by ordering the sale of same for division. The division of the joint property of the parties in a

divorce proceeding is closely akin to the partition of jointly held property which may be accomplished by partition in kind or by sale for division. In such a case, it rarely if ever occurs, that the partition is accomplished by ascertaining the value of the property and ordering one of the parties to pay to the other a fraction of the value in cash. So, in the present case, it appears to be impractical to ascertain the value of the property and order one party to pay a fraction of that value in cash.

It is true that the Chancellor wished the husband to possess the farm as a home for the children. It does not appear that this purpose has been realized, and it appears that the husband is not "farming" the land.

For the reasons just stated, it is deemed more just to vacate the property division and, instead leave the divorced parties as tenants in common of all of their jointly held property. If either party makes application for partition in the present case, the Chancellor may, if he sees fit, supervise partition by sale or in kind in the present case. If neither party requests or the Chancellor does not see fit to do so, the parties may have partition in a separate proceeding.

■ The decree of the Chancellor provided for monthly interest payments of $833.33 to the wife until the $100,000 should be paid. Such payments due prior to the filing of this opinion are deemed to be an equitable compensation for the husband's possession and use of the property and will not be cancelled, refunded or credited to reduce any amount due the wife. However, no such interest payments need be paid hereafter on the $100,000 judgment which is vacated. The husband was ordered to pay $15,000 to the wife "to help pay her expenses of suit and attorneys fees which shall be a credit against the $100,000." Said $15,000, if paid by the husband, will be refunded to him out of the proceeds of sale of the joint property or otherwise recovered in the settlement of the affairs of the parties.

There is an indication in the record that the oldest child, Kim, has reached her ma-

jority. If so, there is no need for further provision for her custody. If not, she should be permitted to reside with either parent until further order of the Chancellor. The son, Tommy Higgins, should remain with his father, with reasonable visitation by his mother, until further order of the Chancellor. The daughter, Tina, should reside with her mother, with reasonable visitation by her father, until further order of the Chancellor.

The award of an absolute divorce to the appellee is affirmed. The decree as to permanent custody of the children is vacated and the cause is remanded for a further hearing in conformity with this opinion.

The decree as to division of property is vacated, and the parties will be decreed to be tenants in common as to all of their jointly held property. Payments of interest due prior to this opinion will be deemed compensation for use of joint property. Future interest payments are vacated. Appellee will be due a refund or credit of the $15,000, if he has paid the advancement for legal expenses.

Costs of this appeal are taxed equally, that is, each party to the appeal will pay one half of cost of appeal.

Affirmed in part, vacated in part, remanded.

LEWIS and CANTRELL, JJ., concur.