LEE SURCEY, Plaintiff in Error, v. STATE OF
TENNESSEE, Defendant in Error.
—474 S.W.2d 167.

August 4, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

Paul Wohlford, Bristol, for plaintiff in error.

David M. Pack, Attorney General, Lance D. Evans, Assistant Attorney General, Nashville, Carl K. Kirkpatrick, District Attorney General, Kingsport, for defendant in error.

GALBREATH, J. The primary insistence of the plaintiff in error in this appeal challenging the validity of his conviction in the Sullivan County Criminal Court and resulting sentence of not less than five nor more than six years in the penitentiary for the crime of incest is that the proof did not establish that the crime had been committed.

It was the theory of the State that the defendant had, over a period of a year, engaged in sexual intercourse with his daughter Virginia who was fifteen years of age

at the time of the trial. She testified, and was corroborated by her 12-year-old sister, that on the date of the offense resulting in the indictment in December of 1969, her father told her to lie on the bed and that he pulled her dress up and her panties down while she pleaded with him, "Don't do it. Don't do it." She related that after being assured by her father that it would only take a few minutes she "let him do it," although admonishing him that her sister Ruby, who unknown to the defendant was peeking through a curtain, would catch him. There was much more testimony on the part of the accomplice daughter, for such she appears to have been in spite of her reluctance, to the effect that her father had "done it" to her before and admissions that the defendant's brother, her uncle, and a friend of the defendant's, Charlie Rhoten, had also committed similar acts in her bed and in a hayloft. The sister Ruby, as aforesaid, corroborated in detail the testimony of the older girl.

The defendant, while denying any sexual connection with his daughter, admitted that he knew of the sexual relations between his daughter Virginia and his friend Charlie Rhoten and that his only reaction on learning of this conduct was to tell his wife about it. We think it important to the disposition we make of this case to emphasize that there was no doubt in anyone's mind who knew of the affair that Rhoten had sexual intercourse with Virginia.

■ ■ It is the position of the appellant that the phrase, "I let him do it" or, "he did it to me" does not prove beyond a reasonable doubt that sexual intercourse occurred between father and daughter. Inasmuch as incest must involve marriage or carnal knowledge of the

accused with those in designated degrees of close family relationship as set out in T.C.A. sec. 39-705, it is axiomatic that sexual penetration is an essential ingredient of the crime. Thus it was incumbent upon the state to prove intercourse beyond a reasonable doubt.

While it would have been better if more descriptive language had been employed by the witness in her testimony, it is not suggested by the plaintiff in error just what actual word or words would have removed any doubt as to what transpired between the young girl and the defendant after they went to bed together and he pulled down her panties. In view of the proof that the witness was somewhat retarded in her educational development, it is doubtful if she would have normally used such an expression as "carnal knowledge." That she did not use a more explicit word that would have left no room for doubt as to what happened may be the result of the same reticence that prevented the draftsmen of the very act prohibiting such conduct from using such language. Only recently has the word that all who read this opinion will naturally bring to mind been employed in public print and usage, and that most sparingly in books, periodicals, plays and movies still considered by large segments of our population to be beyond the pale of respectability. Of course there are many euphemisms that could have been employed, such as "making love" "coitus," "martial-type relations," "intercourse," ad infinitum, but even most of those still leave room for some degree of doubt as to what is meant—perhaps not reasonable doubt, but nevertheless doubt. ("Intercourse," for example, could mean social correspondence.) The reluctance of this little girl to

be bluntly expressive, and thus not entirely communicative, was once denounced by Clarence Darrow who reportedly said, ''People have enough trouble understanding each other as it is, so they ought to be allowed to use all the words they know.''

We find that the defense itself furnished the necessary clarification—if clarification was needed—as to exactly what the defendant did on the occasion in question. After proving by the older daughter that Charlie Rhoten had also done what the defendant was accused of doing, the younger sister was asked if Virginia had told her that she had had sexual relations with Rhoten, and she answered in the affirmative. This must have removed any and all doubt, if such testimony was believed, that the father had sexual relations with his daughter and thus made out the State's case. A jury is entitled to draw reasonable inferences based on common human experience, and certainly the conclusion arrived at was reasonable. Here the defendant has failed to carry the burden his conviction cast on him to prove that the evidence preponderates against such a finding. See McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

Both children relied on by the State as witnesses, while somewhat unlearned, impressed the trial judge, after careful examination, as being cognizant of the solemnity and meaning of an oath; and we share his finding. Whether or not a child, or anyone else, is competent to testify is largely a matter of discretion on the part of the trial judge, and a reviewing Court will not disturb the exercise of his discretion unless it manifestly appears that it was abused. Such has consistently been the holding of our Supreme Court even in the case

of children of tender years (see Bright et al v. State, 191 Tenn. 249, 232 S.W.2d 53), and certainly the rule prevails in cases such as this when the witnesses are 12 and 15 years of age.

The judgment is affirmed.

Dwyer and Mitchell, JJ., concur.